UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                            5:06-CR-493 (NAM)

TERRY JOE MURRAY,

                Defendant.
_____

APPEARANCES                                              OF COUNSEL:

Williams, Heinl Law Firm                                 Simon K. Moody, Esq.
11 Court Street
Auburn, NY 13021
For Defendant

Andrew T. Baxter                                         Richard Southwick,
United States Attorney                                   Assistant United States Attorney
Office of the United States Attorney
100 South Clinton Street
Syracuse, NY 13261-7198

**Hon. Norman A. Mordue, Chief U.S. District Judge**

### MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Defendant Terry Joe Murray was charged in a one count superseding indictment with conspiring to possess with intent to distribute and distribute cocaine and cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and 846. On May 2, 2008, after five days of trial, including testimony by five convicted co-conspirators, the jury found defendant guilty on count one. The jury further found that defendant conspired to distribute or possess with intent to distribute at least 50 grams of a mixture or substance containing a detectable amount of cocaine base (crack). On June 13, 2008, defendant, acting *pro se*, though still represented by counsel, filed a motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure seeking a new trial on the basis of

ineffective assistance of counsel.

## II. DISCUSSION

In his motion papers, defendant claims that defense counsel's assistance was ineffective because: (1) trial counsel failed to investigate and should have moved to dismiss the indictment; (2) trial counsel labored under a conflict of interest; (3) trial counsel failed to cross examine witnesses; (4) trial counsel failed to call any of the "21 witnesses" for defendant; (5) trial counsel failed to object to the introduction of the cocaine substance "when it was not a control[l]ed buy"; (6) he was "not allowed to testify"; and (7) the proof at trial was inconsistent with the indictment.

Pursuant to Fed. R. Crim. P. 33, a court "may grant a new trial to [the] defendant if required in the interest of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). Further, "the court is entitled to 'weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). However, in *Sanchez*, the Second Circuit explained:

> It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment. Where testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation. But the trial judge's rejection of all or part of the testimony of a witness or witnesses does not automatically entitle a defendant to a new trial. The test is whether "it would be a manifest injustice to let the guilty verdict stand."

*Id.* at 1414 (internal citations omitted) (quoting *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989)).

A defendant claiming that he was deprived of the effective assistance of counsel at trial must show that: "(1) counsel's performance 'fell below an objective standard of reasonableness' and that (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Feyrer*, 222 F.3d 110, 119

2

(2d Cir. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

### A.     Investigation and Pre-Trial Motion

Defendant argues that had counsel investigated, he would have learned that the charge against defendant was "nothing but accusation of conspiracy which should have been thrown out at a suppression hearing that his lawyer refused to provide." There is no indication from the record that counsel failed to investigate the charge against defendant. Moreover, prior to trial, defendant filed an omnibus motion through Thomas Murphy, Esq, defendant's counsel at the time, seeking, *inter alia*, an order granting discovery and inspection, and an order directing the government to provide transcripts of all prior proceedings relative to the indictment. The Court granted those requests. Further, the government, in its response papers, acknowledged its obligation to disclose Jencks material pursuant to 18 U.S.C. § 3500 and all exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Accordingly, there is no basis on which to conclude that any of defendant's attorneys, were deficient in their investigation of this matter or in their motion practice before the Court.

### B.     Conflict of Interest

"The Sixth Amendment guarantees a criminal defendant the right to counsel, and with that guarantee comes the correlative right that such representation be free from conflicts of interest." *Feyrer*, 333 F.3d 110 at 115-16. "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *See United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002). "While a defendant is required to demonstrate prejudice to prevail on most claims of ineffective assistance of counsel . . . the same showing is not necessary when a defendant's counsel is burdened by an actual conflict of interest because,

3

under such circumstances, prejudice is usually presumed." *Feyrer*, 333 F.3d at 116.

In this case, defendant has alleged that his trial counsel labored under a conflict of interest. Defendant's arguments, however, are conclusory and he does not identify the conflict with any specificity. Moreover, no conflict is apparent from the record. Accordingly, defendant's motion for a new trial on the basis that his trial counsel had a conflict of interest, is denied.

### C.   Cross-Examination of Witnesses

Defendant claims defense counsel's failure to cross examine witnesses rendered his representation inefficient. "The conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam).

At trial, twenty-six witnesses testified. Defense counsel cross examined all but eight of those witnesses. The witnesses defense counsel did not cross-examine were Patricia Rogers, David Johnson, Timothy Smoot, Cheri Hatch, Aimee Lemieux, Patricia Rose, Bruce Matthie, and Michele Ladison. With the exception of Johnson and Rose, these witnesses testified about issues tangential to the alleged drug distribution conspiracy. For example, Rogers testified that she owns Autos Unlimited and sells cars on eBay. T. 652. Rogers discussed an eBay transaction for the sale of a BMX Z3 to Johnny Bogardus for which defendant put a deposit of $500 on the car through PayPal. T. 655-56.

Smoot stated that he was employed by NESCO, a dealership for snowmobiles, all terrain vehicles, and motorcycles, T. 761, and that NESCO serviced vehicles for customer Francis Murray. Smoot stated, however, that he recognized defendant at trial because he remembered seeing him when defendant "come in and made the arrangements to have the work done on the

four wheeler". T. 770.

Hatch stated that she was the manager of the Sears Auto Center in Massena, New York. T. 771. Hatch testified regarding the automotive services Sears provided to several different vehicles at defendant's request.

Lemieux stated that she is the owner of Adirondack Furniture Center, and testified regarding business records showing that defendant purchased furniture from one of her retail stores.

Matthie testified that his wife Tabitha Murray is related to defendant, T. 912, and that defendant asked to store a four wheeler and snowmobile on Matthie's farm. T. 912-13.

Ladison testified that she has known defendant since she was a child, T. 918, and that she received a letter from defendant in November 2006, asking her to visit him at St. Lawrence County Jail. T. 918. Ladison visited defendant three times at the jail and he asked her to remove his personal belongings from his house. T. 918-19. Ladison declined to so because she was too busy working. T. 919.

Johnson, who stated he was defendant's stepson, T. 696, testified that he assisted the St. Lawrence County Drug Task Force by wearing a "wire" while meeting with defendant in defendant's residence. T. 697-98. The government introduced a recorded conversation between defendant and Johnson, as well as evidence that Detective Jenks used Johnson as a confidential informant to purchase cocaine from Gregory James, a convicted co-conspirator, who obtained the cocaine (Gov't Ex. 43) from defendant's residence while Johnson waited in the car. The government, on direct examination, elicited testimony from Johnson regarding his cooperation with law enforcement as a confidential informant, T. 697, prior conviction and time in prison for burglary, T. 709, as well as a prior marijuana conviction, T. 716. Defendant does not suggest

5

there is a further basis for calling Johnson's credibility into question.

Rose testified that she is a forensic chemist for the New York State Police and that a substance submitted by the St. Lawrence Sheriff's Department, (Gov't Ex. 43), contained cocaine. Rose testified as an expert witness, and there was no indication at trial that defendant disputed the results of her tests. Moreover, defendant fails to identify how defense counsel's failure to cross-examine any of the above-referenced witnesses prejudiced him. Accordingly, defendant's motion for ineffective assistance of counsel based on defense counsel's failure to cross-examine these witnesses is denied.

### D. Defense Witnesses

Defendant claims defense counsel failed to call or subpoena any of the "21 witnesses" for defendant to testify at trial. "[T]he tactical decision of whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation." *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997). Defendant does not identify the witnesses he claims trial counsel should have called or explain how their testimony would have been relevant. Thus, there is no basis on which to conclude that defense counsel's performance fell below an objective standard of reasonableness or that the result of this trial would have been different.

### E. Admission of Cocaine

Defendant challenges the admission of evidence of the cocaine substance attributed to him at trial, Exhibit 43, on the basis that it was not obtained as a result of a "control[l]ed buy" but found in a house in which he allegedly lived with his girlfriend. Gerald Jenks, a detective on the drug task force for the St. Lawrence Sheriff's Department, testified that on May 23, 2006, he sent David Johnson, who was a confidential informant, to purchase cocaine from Gregory James.

6

Detective Jenks testified that Johnson and James drove to a trailer on Arnold Wagner Road,[1] where James exited the vehicle, went into the trailer, and then returned to the vehicle. T. 671-72. Detective Jenks testified that Johnson later turned the evidence over to him, and that a field test indicated that the substance contained cocaine. T. 673. As stated above, Rose testified that subsequent scientific testing revealed that this substance, Exhibit 43, contained cocaine. Defense counsel cross-examined Detective Jenks, and defendant fails to identify any other basis on which to call the admissibility of this evidence into question. Moreover, in view of the abundance of other evidence attributing cocaine and cocaine base (crack) to defendant's possession, there is no reasonable probability that the outcome of the trial would be different if the above referenced evidence was not admitted.

   F.   **Deprivation of the Right to Testify at Trial**

Defendant claims that his trial counsel did not allow him to testify at trial. A claim of ineffective assistance of counsel on the basis that trial counsel did not sufficiently inform the defendant of the "nature and existence of the right to testify," or that trial counsel did not abide by the defendant's decision about whether to testify, must satisfy the two-pronged test established in *Strickland*. *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997).

The Court held an evidentiary hearing regarding this issue on January 6, 2009, at which defendant's trial counsel, Craig Schlanger, and defendant testified. Trial counsel testified that he "believe[d]" that he discussed the right to testify with defendant prior to trial, and although he could not recall a "specific conversation and what I said and what he said" he has discussed a defendant's right to testify "in every case that I have handled and I couldn't imagine not having discussed it with him in this case either." T. 8. Trial counsel testified that he had a brief

---

[1] Defendant's residence at the time. T. 144.

7

conversation with defendant after the last witness was excused and defendant "did express to me that he wanted to testify. I advised him not to." T. 11. Trial counsel stated that defendant "didn't really say anything" in response, T. 23, and that it was his impression that defendant "wasn't totally thrilled with my advice but he was going along with it." T. 22. Trial counsel testified that he could not recount "a specific conversation in which he told [defendant]" that he had the absolute right to testify. T. 11-12.

Defendant testified that trial counsel did not tell him that he had the absolute right to testify or that it was his decision, not counsel's. T. 41. Defendant stated that during trial, he told trial counsel that he "needed to testify about the money and he says no. He told me no and that was about it." T. 43.

Even assuming trial counsel informed defendant of his right to testify, there is no evidence in the record from which the Court can find that trial counsel informed defendant that he had the absolute right to testify or that the decision about whether to testify was defendant's alone. Further, the evidence indicates that defendant wished to testify but that his attorney advised him not to, a decision with which, by the accounts of defendant and trial counsel, defendant was not happy. Since there is evidence that defendant told trial counsel, at trial, that he "needed to testify" and that trial counsel advised against it, and there is no evidence that trial counsel informed defendant that the decision whether to testify was defendant's alone, the Court cannot say that defendant's right to testify was not violated. Accordingly, the Court must consider the second prong of the *Strickland* test: whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Brown*, 124 F.2d at 79-80.

In this case, defendant stated at the hearing that he wanted to testify about the "money

8

situation" and where the money came from. T. 38. At trial, there was evidence that defendant had $25,000 hidden in the wall of the kitchen in the house in which he resided, as well as $8,000 buried in the back yard. There was also testimony indicating that defendant purchased two BMW vehicles and bought items on the Internet after loading money onto pre-paid debit cards his girlfriend purchased at his direction from a local drug store. According to the evidence at trial, defendant was not employed at any time during the conspiracy and had no income.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. "The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). "Even serious errors by counsel do not warrant . . . relief where the conviction is supported by overwhelming evidence of guilt." *Id*.

To convict defendant of conspiring "to possess with intent to distribute and distribute cocaine and cocaine base ('crack'), in violation of" 21 U.S.C. § 841(a)(1), the Court instructed the jury it must find that: (1) two or more persons entered the charged unlawful agreement; (2) defendant knowingly and willfully became a member of the conspiracy; and (3) the conspiracy involved the possession with intent to distribute or distribution of cocaine and cocaine base. The Court also instructed the jury that if it found defendant had "unexplained wealth", "expended large sums of currency," or "acquired lavish possessions" during the time that the government alleged defendant was engaged in drug trafficking and had "no legitimate source of income for those purchases" it could infer "that the wealth was derived from drug trafficking."

Even if defendant explained "the money", and the jury therefore could not infer that his

otherwise unexplained wealth was derived from drug trafficking, there is no reasonable probability that the verdict would have been different because there was overwhelming evidence to satisfy each element of the conspiracy charged in this case. All five individuals with whom defendant was indicted in this case, Sonya Trimm, Johnny Bogardus, Amber Murray, Gregory James, and Randy Coller, pled guilty and testified at trial. These co-conspirators testified that they obtained cocaine and/or crack cocaine from defendant and described defendant's narcotics activities in detail, including the amounts he distributed, the prices he charged for cocaine, and use of cocaine and crack cocaine as compensation for work they performed for him.

The evidence at trial showed that two or more persons entered the unlawful agreement to possess cocaine and crack cocaine with intent to distribute and distribute cocaine and crack cocaine. For example, Sonyia Trimm, Amber Murray, convicted co-conspirators, testified that they drove to Syracuse, New York, at defendant's request, to purchase a supply of cocaine on numerous occasions. Trimm and Murray testified that defendant would compensate them for the trips with cocaine. Randy Coller, also a convicted co-conspirator, testified that he purchased cocaine and cocaine base ("crack") from defendant three to four times each week and he knew that if the porch light was on at defendant's residence, defendant was "open for business". T. 867. Thus, there was evidence from which the jury could find that defendant, as well as Trimm, Murray, Coller, and others entered an unlawful agreement with the intent to distribute and distribute cocaine and cocaine base ("crack").

There was also overwhelming evidence from which the jury could find that defendant knowingly, willfully, and voluntarily became a member of the conspiracy and that it involved possession with intent to distribute or distribution of cocaine and crack cocaine. *See United States v. Story*, 891 F.2d 988, 992 (2d Cir. 1989) ("The only elements of a section 846 narcotics

10

conspiracy offense are the existence of a conspiracy and the defendant's willful joining it."). As stated above, Trimm testified that she and Murray drove to Syracuse to purchase cocaine at defendant's direction. Moreover, Trimm stated at trial that defendant weighed the cocaine following their return and that she observed defendant selling cocaine to a number of people who came to their residence. T. 147-48.

James, another convicted co-conspirator, testified that defendant would not sell him drugs directly after they first met because defendant did not know him. T. 796. James testified that after making a "couple" visits to defendant with Coller, with whom defendant was familiar, defendant began selling cocaine to James. T. 792. James stated that other people who wanted cocaine would give him cash, and he would "go to Terry Murray's and buy cocaine." T. 799. James also testified that in exchange for cocaine, he cleaned up defendant's yard, planted flowers, painted defendant's house, and put a wall in defendant's garage. T. 807. Thus, there was ample evidence from which the jury could find that defendant knowingly, willingly, and voluntarily participated in a conspiracy to possess with intent to distribute and distribute cocaine and crack.

The only issue about which defendant stated he wished to testify related to the money he had hidden around his residence and spent on vehicles and other high priced items, despite having no legal income. Even if defendant had explained the money in a way that would have prevented the jury from drawing an inference that the money was derived from drug trafficking, such testimony would not cast doubt on the overwhelming evidence showing that Trimm, Bogardus, Murray, James, Coller, and others entered an agreement to possess with intent to distribute and to distribute cocaine and crack and that defendant willfully participated in that conspiracy. Thus, the Court, having presided over the trial in this case, finds that defendant has failed to show that

11

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 690. Accordingly, defendant's motion for a new trial based on ineffective assistance of counsel is denied.

### G. Proof Inconsistent with Indictment

For the reasons stated above, the Court finds defendant's conclusory argument that the proof at trial was inconsistent with the indictment is without merit.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion pursuant to Rule 33 is **DENIED** in its entirety, and it is further

**ORDERED** that sentencing is set for June 22, 2009 at 11:00 a.m., in Syracuse, New York, before the undersigned. All sentencing memoranda shall be filed on or before June 8, 2009.

**IT IS SO ORDERED.**

Date: May 13, 2009

_____
Norman A. Mordue
Chief United States District Court Judge